Argued and submitted December 17, 1980,
affirmed in part; reversed in part
and remanded February 3, 1981

In the Matter of the Compensation of
Rose E. Pedersen, Claimant.

PEDERSEN,
*Petitioner,*
*v.*
FRED S. JAMES & CO. et al,
*Respondents.*

(WCB No. 79-8636, CA 18331)

622 P2d 770

Samuel J. Imperati, Portland, argued the cause for petitioner. With him on the brief was Welch, Bruun & Green, Portland.

Nancie Potter Arellano, Portland, argued the cause for respondents. With her on the brief were Ridgway K. Foley, Jr., and Schwabe, Williamson, Wyatt, Moore & Roberts, Portland.

Before Joseph, Presiding Judge, and Warden and Warren, Judges.

WARDEN, J.

**WARDEN, J.**

Claimant appeals from an order of the Workers' Compensation Board (Board) which (1) reversed the referee's order granting an award of ten percent unscheduled disability for claimant's back injury, and (2) upheld the employer's denial of compensability for a neck condition which the Board and the hearings referee found not to be compensable.

■ With respect to the degree of disability in the low back, we find the medical evidence supports the Board's finding of no permanent disability. That portion of the Board's order is affirmed. While it is true that two doctors reported chronic low back strain, one thought it could be improved by exercises and neither found any limitation of movement or function. The report of Orthopaedic Consultants is detailed and convincing in its conclusion that, although there is tenderness over part of the lower back, there was no pain occasioned by movement and no limitation of movement or function.

With respect to the compensability of the neck condition, the Board and referee discount a report by claimant's treating physician which relates the neck condition to her employment. The opinions of both the Board and the referee attempt to establish that only the low back problem was complained of after the injury, because the neck is not mentioned in several medical reports. Our review of the record discloses ample evidence of the neck problems and the low back condition in the same time period. That portion of the Board's order is reversed.

In this case, claimant did not become injured as a result of an identifiable traumatic episode. On the day in question, claimant apparently worked as usual at her job, which included hauling large, heavy bolts of cloth and sewing. The next morning, claimant awoke with her back aching and muscles "sore all over" from her head down to her feet. The first doctor she saw diagnosed the problem as "flu syndrome" or possible urinary infection and noted that claimant had headaches. Two weeks later her family doctor corroborated those symptoms and noted "headache with eye pain." On March 9, 1979, one month after the first onset of

any complaints, a doctor reported "degenerative disk disease showing at the C5-6 interspace where the disk space is slightly narrowed and where motion is restricted," in the cervical spine region. On March 10, 1979, claimant began daily sessions of physical therapy to her cervical and lumbar spine, including hot packs, ultrasound, and massage to neck and back. A letter dated March 12, 1979, from the physical therapist to the referring doctor documents claimant's report of tingling in the left arm. On April 9, 1979, another physician documented claimant's complaint of "numbness of the left ring and little fingers over the past two months that occurs with elevation of the shoulder."

Claimant saw Dr. Berkeley on June 14, 1979, after she had been back working part-time for two months. The doctor reported on July 16th that at the time of the June visit "I thought that she had an acute on [sic] chronic muscular-ligamentous strain and sprain in the neck, as well as back." On July 17th, after myelography was performed, the earlier diagnosis of cervical spondylopathy was confirmed by Dr. Berkeley. On July 30th Dr. Berkeley recommended by letter to the employer that the C 5-6 cervical disc be removed and the vertebral bodies fused. The letter stated: "It is also my opinion that her condition is a direct result of her on the job injury sustained on 2-07-79." On September 10th, Orthopaedic Consultants confirmed the diagnosis of degenerative disc disease accompanied by pain in the neck and shoulder region and tingling or numbness in the fifth and ring fingers of her left hand. The medical history was characterized, somewhat implausibly, as "a probable upper respiratory infection and low backache which spread to involve the cervical area." Finally, in October, Dr. Berkeley reviewed the report of Orthopaedic Consultants and wrote to the employer:

> "I read carefully through the report [of Orthopaedic Consultants] and I agree with their comments particularly that there were no radicular symptoms or localizing neurological signs. This however, does not preclude a painful disc lesion at C5-6 as demonstrated on the myelogram nor does the normality of the EMG and nerve conduction studies. The patient is still symptomatic with neck and shoulder pain, headaches and she also says she is now getting 'tingling' in the left arm. The patient's persisting headache and neckache as well as mid-dorsal pain in the

presence of a degenerative disc disease at C5-6 as confirmed by myelography, support the indication for surgical treatment."

The compensability of the low back injury was not denied by the employer and is not challenged on appeal, and we accept it as a given fact. There is no evidence that the neck problem existed prior to the onset of claimant's back problems in February, 1979. Claimant admitted to her neck sometimes feeling tired after hours of sewing, but that is neither surprising nor indicative of cervical spondylopathy. The employer argues rather that the neck condition arose at a later time. While the discomfort in the neck seems to have increased over time, the neck problem proving ultimately to be more serious and persistent than the low back strain, the medical evidence reviewed above shows that both problems arose the day after working on or about February 7th. There is confusion in the first medical report as to the exact nature and source of claimant's problems, which included discomfort in the neck and back regions, with possible causes including flu or urinary infection, but we attribute that to the element of speculation inevitable in diagnostic pathology. The medical evidence as a whole supports claimant's claim to compensability for her neck condition. The case is remanded to the Workers' Compensation Board; the Board is instructed to remand it to the Evaluation Division of the Workers' Compensation Department for determination of compensation to be paid.

Affirmed in part; reversed in part and remanded.